UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00887-FDW-DCK

| | |
|---|---|
| TRANE U.S. INC., | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| GASMASTER INDUSTRIES, LTD., | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Plaintiff Trane U.S. Inc.'s ("**Plaintiff**") Motion for Summary Judgment, (Doc. No. 38), Plaintiff's Motion for Sanctions, (Doc. No. 40), Defendant Gasmaster Industries, Ltd.'s ("**Defendant**") Motion to Strike Plaintiff's Reply, (Doc. No. 50), Defendant's Motion to Continue Docket Call/Trial, (Doc. No. 51), and Defendant's Motion for a Hearing, (Doc. No. 54). These matters have been fully briefed, (Doc. Nos. 39, 41, 44–47, 50, 52–53), and are ripe for ruling. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**, Plaintiff's Motion for Sanctions is **DENIED**, Defendant's Motion to Strike is **DENIED as MOOT**, Defendant's Motion to Continue Docket Call/Trial is **GRANTED**, and Defendant's Motion for Hearing is **DENIED as MOOT**.

I. BACKGROUND

This case arises out of Plaintiff purchasing Defendant's boilers for a project at a military base in South Korea. (Doc. No. 1.) Plaintiff contracted with the United States to replace boilers for the heating system at OSAN Air Force Base ("**the base**") in Pyeongtaek, Gyeonggi-do, South Korea ("**the project**"). (Doc. No. 1, p. 2; Doc. No. 11, p. 3.) Defendant successfully bid to supply boilers for the project, and Plaintiff purchased fifty-four boilers ("**the boilers**") from Defendant in

1

March 2020. (Doc. No. 1, pp. 2–3; Doc. No. 11, pp. 3–4.) Sometime after the installation of the boilers, Plaintiff notified Defendant of various issues. (Doc. No. 1, pp. 4–6; Doc. No. 11, p. 9.) Because of these issues with the boilers, the base did not have heating. (Doc. No. 1, p. 6; Doc. No. 45, p. 11.) Plaintiff alleges the boilers were defective. (Doc. No. 1, pp. 6–9, 11.) In response, Defendant contends the boilers were not defective, and the issues stemmed from the misuse and improper operation of the boilers and a failure to follow Defendant's instructions. (Doc. No. 45, pp. 1–2, 6.) Defendant investigated the issues with the boilers and attempted to meet with Plaintiff, but Plaintiff and Defendant never reached a resolution. (Doc. No. 1, p. 6; Doc. No. 11, pp. 9–10; Doc. No. 45, p. 12.) Ultimately, Plaintiff decided to replace all of the boilers with forty-three new boilers from another company. (Doc. No. 1, p. 6; Doc. No. 39, p. 1; Doc. No. 45, p. 14.)

On December 21, 2023, Plaintiff filed its Complaint. (Doc. No. 1.) Plaintiff brings the following claims against Defendant: 1) breach of implied warranty of merchantability; 2) breach of implied warranty of fitness for a particular purpose; 3) breach of express warranty; and 4) breach of contract. (Id.) Plaintiff moves for summary judgment on all claims. (Doc. No. 38, p. 1.)

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the
2

absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In addressing a motion for summary judgment, courts "'must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations.'" Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 761 (4th Cir. 2021) (quoting Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018)) (cleaned up). Specifically, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

Under Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure of discovery." Fed. R. Civ. P. 37(a)(1).

> "If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule . . . 37(a), the court where the action is pending may issue further just orders [including]: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

3

Fed. R. Civ. P. 37(b)(2)(A).

### III. ANALYSIS

Plaintiff moves for summary judgment on all four of its claims. (Doc. No. 38, p. 1.) Plaintiff argues summary judgment is appropriate because its liability expert opines the boilers were defective in design, and this opinion is unrefuted since Defendant did not retain a liability expert.[1] (Doc. No. 39, pp. 1–2.) Despite extensions of the expert report deadlines, (Doc. Nos. 20–21), Defendant did not designate an expert witness, (Doc. No. 45, p. 11). Defendant contends summary judgment should be denied because there are several genuine disputes of material fact. (Doc. No. 45, pp. 5–7, 14–15, 26–27.)

Plaintiff also moves for sanctions. (Doc. No. 40.) Plaintiff claims the Court should impose sanctions because Defendant failed to make a complete electronically stored information ("**ESI**") production and Defendant's counsel failed to oversee the ESI discovery process. (Doc. No. 41.) Defendant opposes this request for sanctions and seeks to strike the request for sanctions against its counsel. (Doc. No. 50.)

The Court addresses each pending matter in turn below.

---

[1] For the reasons set forth below, the Court concludes Defendant has sufficiently shown there are genuine issues for trial. However, even if the Court did not find this, Plaintiff's reliance on its designated expert, (Doc. No. 39, pp. 1–2, 7, 11, 18), is misguided. "[U]nsworn reports are inadmissible on summary judgment unless accompanied by affidavits or depositions swearing to their contents and conclusions." Edens v. Kennedy, 112 F. App'x 870, 879 (4th Cir. 2004) (per curiam). Even if an expert's report is signed, it is not always proper at the summary judgment stage. See In re French, 499 F.3d 345, 358 (4th Cir. 2007) (Whitney, J., concurring) ("Dr. Freedenburg's statement was neither sworn under oath nor made under the penalty of perjury. As a result, the statement fails to meet the most basic requirement of form required by Rule 56(e)."). While Plaintiff's designated expert report is signed, it is not sworn under penalty of perjury and specifically states the expert reserves the right to change his opinions and conclusions. (Doc. No. 39-6, p. 31.) Plaintiff included excerpts from its designated expert's deposition, but based on the excerpts it does not appear he swore to the report's contents. (Doc. No. 39-7.) Even though Plaintiff asserts "Mr. Puskar's opinions that [Defendant] supplied defective boilers to [Plaintiff] are unrefuted and, for purposes of summary judgment, undisputed[,]" (Doc. No. 39, p. 7), the Court is not persuaded.

4

**A. Summary Judgment**

Evidence produced for or against a summary judgment motion must be admissible at trial, but it does not need to be produced in an admissible form. Celotex, 477 U.S. at 323–24. Courts have "'great flexibility with regard to the evidence that may be used on a [summary judgment] proceeding.'" Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 538 (4th Cir. 2015) (citation omitted) (affirming a district court's decision to consider a sworn expert report at the summary judgment stage because "the content of the reports would be admissible through the expert's testimony at trial[.]"). "Subsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment." Id. at 539 (citing DG & G, Inc. v. FlexSol Packaging Corp. of Pompano Beach, 576 F.3d 820, 826 (8th Cir. 2009) (cleaned up)).

In this case, genuine disputes of material fact preclude the Court from granting summary judgment in favor of Plaintiff. The Court will address each of Plaintiff's claims in turn. To start, the Court concludes at least one dispute of material fact precludes summary judgment on Plaintiff's claim for breach of implied warranty of merchantability.[2] "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.C. Gen. Stat. § 25-2-314(1). "Goods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used . . . ." Id. § 25-2-314(2)(c). "To prove a breach of implied warranty of merchantability, a plaintiff must show (1) that the goods in question were subject to an implied warranty of merchantability; (2) that the goods were defective at the time of the sale and as such did not comply with the warranty; (3) that the resulting injury was due to the defective nature of the goods; and (4) that damages were suffered." Williams v.

---

[2] Plaintiff does not cite to N.C. Gen. Stat. § 25-2-314 in its Complaint, (Doc. No. 1), but does reference it in its memorandum in support of its Motion for Summary Judgment, (Doc. No. 39, p. 10).

O'Charley's, Inc., 728 S.E.2d 19, 21 (N.C. Ct. App. 2012). Plaintiff claims the boilers were defective at the time of the sale. (Doc. No. 1, pp. 4–6.) However, Defendant contends the boilers were not defective and the issues stem from other causes, like Plaintiff's improper use and operation of the boilers. (Doc. No. 45, pp. 1–2, 6, 26.) For example, Defendant cites to a document prepared by Plaintiff, which states a failure with the boilers is "[n]ot [Defendant's] issue – [but is because of] water hammering." (Doc. No. 45-4, p. 11.) Additionally, Defendant cites to reports of tests run on the boilers, showing they functioned properly. (Doc. No. 45-3; Doc. No. 45-8.) In another example, Defendant cites to Plaintiff's 30(b)(6) witness's deposition to argue Plaintiff did not properly monitor the temperature of the oil used in the boilers. (Doc. No. 45-2, p. 8.) Furthermore, Defendant cites to evidence showing Plaintiff operated the boilers at pressure level lower than Defendant recommended and Plaintiff or its contractor improperly installed pressure relief valves. (Doc. No. 45, pp. 22, 26.) Finally, Defendant cites to one of Plaintiff's documents, which shows water leaked onto the boilers, (Doc. No. 45, p. 18), and Plaintiff's scheduling documents, which show "an unknown, but sizable quantity of allegedly defective . . . boilers [are] still performing their function, showing that they did not have catastrophic design or manufacturing defects[,]" (Doc. No. 45, p. 14). Based on these disputes, the Court cannot resolve this claim on a motion for summary judgment. The Court concludes the jury is entitled to assess the credibility of witnesses, to weigh the evidence, and to draw inferences from the facts in deciding whether the boilers were defective at the time of sale or if the issues arose later. Therefore, the Court finds Plaintiff is not entitled to summary judgment on its claim for breach of implied warranty of merchantability.

Second, the Court determines at least one dispute of material fact prevents granting summary judgment on Plaintiff's claim for breach of implied warranty of fitness for a particular

purpose.[3] "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." N.C. Gen. Stat. § 25-2-315. As explained above, Defendant posits sufficient evidence to create a genuine dispute of material fact regarding whether the boilers were defective or whether the issues with the boilers stemmed from Plaintiff's use and operation of the boilers. Again, the Court concludes the jury is entitled to assess the credibility of witnesses, to weigh the evidence, and to draw inferences from the facts in deciding whether the boilers were defective and unfit for their intended purpose, or if the issues stem from Plaintiff's and its contractor's installation and use of them. Accordingly, because of these genuine disputes of material fact, the Court cannot grant summary judgment on Plaintiff's claim for breach of implied warranty of fitness for a particular purpose.

Third, the Court concludes at least one dispute of material fact also precludes summary judgment on Plaintiff's claim for breach of express warranty. To recover for breach of express warranty, a plaintiff must show there was "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making [its'] decision to purchase, (3) and that this express warranty was breached by the defendant." Harbour Point Homeowners' Ass'n, Inc. v. DJF Enters. Inc., 697 S.E.2d 439, 447 (N.C. Ct. App. 2010). Plaintiff claims when it "selected [Defendant] as the winning bidder on the [] project, [Plaintiff] relied on [Defendant's] representation that the boilers would be merchantable, free from defects, and fit for their intended purpose." (Doc. No. 39, p. 13.) Plaintiff argues Defendant "breached those warranties by providing

---

[3] The Court notes Plaintiff's Complaint does not reference N.C. Gen. Stat. § 25-2-315. (Doc. No. 1.) However, Plaintiff does reference the relevant statute in its memorandum in support of its Motion for Summary Judgment. (Doc. No. 39, p. 12.)

7

boilers that were defective in design . . . ." (Id. at 14.) As explained above, Defendant again provides sufficient evidence to create a genuine dispute of material fact regarding whether the boilers were defective, meaning Defendant breached its express warranty, or whether the issues with the boilers stemmed from Plaintiff's use and operation of the boilers. The Court finds the jury, rather than the Court, is entitled to assess the credibility of witnesses, to weigh the evidence, and to draw inferences from the facts in deciding this. Therefore, the Court cannot grant summary judgment on Plaintiff's claim for breach of express warranty.

Fourth, the Court finds at least one dispute of material fact prevents it from granting summary judgment on Plaintiff's breach of contract claim. "'The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract.'" Highland Paving Co., LLC v. First Bank, 742 S.E.2d 287, 291 (N.C. Ct. App. 2013) (citation omitted). "As a general rule, if either party to a bilateral contract commits a material breach of the contract, the non-breaching party is excused from the obligation to perform further." McClure Lumber Co. v. Helmsman Constr., Inc., 585 S.E.2d 234, 239 (N.C. Ct. App. 2003). Once again, Defendant has sufficiently shown there are genuine disputes of material fact as to whether Defendant provided Plaintiff with defective boilers, meaning Defendant breached, or whether the issues with the boilers are the result of misuse, improper operation, and other causes. The Court concludes the jury is entitled to assess the credibility of witnesses, to weigh the evidence, and to draw inferences from the facts in deciding whether the boilers were defective or if the issues arose later. Therefore, the Court finds Plaintiff is not entitled to summary judgment on its claim for breach of contract.

Based on the pleadings, exhibits, and arguments presented in this matter, it is clear that a genuine dispute of material fact exists as to at least one element of each of Plaintiff's claims.

8

Resolution of these disputes would require the Court to resolve the credibility of witnesses and weigh the evidence, which is appropriate for a jury, not the Court. See Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 761 (4th Cir. 2021) ("[C]ourts must . . . refrain from weighing the evidence or making credibility determinations. A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party." (citations and quotations omitted)). Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment. (Doc. No. 38.)

**B. Sanctions**

Plaintiff asserts two bases for sanctions against Defendant and its counsel: 1) Defendant violated this Court's Order by failing to make a complete ESI production; and 2) Defendant's counsel failed to oversee the ESI discovery process. (Doc. No. 41, pp. 8–10.)

Under Federal Rule of Civil Procedure 37, sanctions may be imposed on a party who fails to comply with a court's discovery order. Courts have considerable discretion in determining whether sanctions are appropriate, and the Fourth Circuit has adopted a four-factor test to determine which sanctions are appropriate. See, e.g., Anderson v. Found. for Advancement, Educ. & Emp. Of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998). Courts determine: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Id. Notably, "Rule 37(e)(1) requires a "finding of prejudice to another party" before sanctions can be imposed." MB Realty Grp., Inc. v. Gaston Cnty. Bd. of Educ., No. 3:17-cv-00427-FDW-DCK, 2019 WL 2273732, at *2 (W.D.N.C. May 28, 2019).

9

Case 3:23-cv-00887-FDW-DCK    Document 55    Filed 08/07/25    Page 9 of 11

To start, the Court notes Plaintiff does not fully explain what prejudice it suffered because of Defendant actions in discovery. (Doc. No. 41.) Plaintiff conclusory states "[Defendant's] tactics have materially prejudiced [Plaintiff's] ability to prosecute this action and prepare its case for trial." (Id. at 1.) Plaintiff summarily claims "[Defendant's] conduct has substantially prejudiced [Plaintiff because Plaintiff] was forced to complete discovery, including expert discovery without the benefit of responsive documents from [Defendant], including [Defendant's] internal written communications." (Id. at 9.) Also, the decision of whether to impose sanctions is within the Court's discretion and sanctions are not mandatory. At this time, the Court determines sanctions are not appropriate. Plaintiff may file pre-trial motion(s) in limine, wherein Plaintiff may renew its arguments, if appropriate. Additionally, if Defendant files a motion in limine, for example regarding Plaintiff's designated expert witness, Plaintiff may renew its arguments, if appropriate.

Therefore, Plaintiff's Motion for Sanctions, (Doc. No. 40), is **DENIED**. Since the Court declines to impose sanctions, Defendant's Motion to Strike Plaintiff's Reply, (Doc. No. 50), is **DENIED as MOOT**.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. No. 38), is **DENIED**, Plaintiff's Motion for Sanctions, (Doc. No. 40), is **DENIED**, Defendant's Motion to Strike Plaintiff's Reply, (Doc. No. 50), is **DENIED as MOOT**, Defendant's Motion to Continue Docket Call/Trial, (Doc. No. 51), is **GRANTED**, and Defendant's Motion for a Hearing, (Doc. No. 54), is **DENIED as MOOT**.

**IT IS FURTHER ORDERED** that Docket Call and trial in this matter are **CONTINUED** to the mixed trial term beginning November 3, 2025, and the final pretrial conference is **CONTINUED** and shall take place immediately following Docket Call on November 3, 2025. In

light of this continuance, the Court *sua sponte* revises the Case Management Order, (Doc. No. 13), as follows: Pretrial submissions due October 14, 2025; Motions in Limine and/or Trial Briefs due October 27, 2025; Responses to Motions in Limine due October 29, 2025.

    **IT IS SO ORDERED.**

Signed: August 7, 2025

Frank D. Whitney
Senior United States District Judge